one dash six zero one six zero and if I mispronounced it Escobar-Verdecio Verdecio versus Garland. Is it Miss Kovacic? Yes Kovacic. Sorry. We're ready? Good afternoon your honors and may it please the court. My name is Zeta Kovacic and I along with my co-counsel Johanna Ghilarroyo represent the petitioner Mr. Rafael Escobar-Verdecia. We would like to respectfully request five minutes reserve five minutes for rebuttal. The board made the following three errors in its decision. First by failing to review the immigration judge's adverse credibility determination. The board erred in disregarding all of Mr. Escobar's testimony and corroborating evidence that suggests that he was in fact persecuted on account of his political opinion and imputed political opinion. Second the board erred in affirming the immigration judge's decision because the decision did not contain fact findings of facts or suffered which dates back to 1996 and are corroborated by the record the evidence in the record and rise to a level of persecution necessary to form the basis of his asylum claim. Lastly the board erred in affirming the immigration judge's decision as to his well-founded fear of future persecution independent of the past persecution he suffered because the immigration judge's decision did not evaluate Mr. Escobar's fear of future persecution using the four-pronged the four-part test set forth in Zao and it required Mr. Escobar to offer direct proof of the Cuban government's motive and because substantial evidence compelled the finding of a well-founded fear of future persecution which DHS did not and cannot rebut. I will address these issues in order. First in failing to address the immigration judge's adverse credibility determination the board erred in disregarding all of Mr. Escobar's evidence which suggests that he was in fact persecuted on account of his political opinion. This court has found grounds for remand where the board failed to evaluate all evidence about potential mixed motives. Here the board did not consider any evidence in the record relating to whether Cuban government officials were also motivated at least partly by Mr. Escobar's political or imputed political opinion. The board failed to consider the ample evidence in the record supporting the possibility that an illegitimate motivation was present here. For example Mr. Escobar submitted a handwritten declaration in which he testified that he was fired from his job as a teacher in 1996 after he refused to participate in political activities at his place of employment and he had had this position for 10 years prior to this incident. The immigration judge and the board failed to consider all of the evidence that was filed by Mr. Escobar concurrently with his I-589 application, all of which corroborates that he was fired from his job, a position that he had for 10 years as a teacher including his degree that he graduated and was a licensed teacher. Council, I just want to make clear just you're not maintaining your motion to remand or the appeal of the withholding of removal or the CAT claim are you? You're relying on the asylum claim at this point because the other ones have an exhaustion problem, is that correct? Yes, yes your honor and they were not argued on the appeal brief. The co-counsel and I did not appeal to the much weight so we're just gonna be discussing the asylum basically just the asylum. But you have a you believe you have a strong asylum claim because the state has identified him as a counter-revolutionary and that's like boy I mean it's right in the heart of political asylum is that your position? Yes, yes and also you know there's there's 23 years worth of evidence in the record dating back to as early as December of 1996 which indicates that this he's been persecuted for 23 years and none of that was considered by the immigration judge when when determining whether or not he suffered past persecution. Immigration judge only considered the last two detentions that that Mr. Escobar suffered prior to leaving Cuba and it was years worth of things that they made him go through including sentencing him to nine months at a labor camp and none of this made it into the record and it's it was filed right along with his I-589 application and you can tell it was filed at that point because the evidence is right after the number on the record of proceedings the I-589 application stops at 310 and then the evidence follows so all this evidence was filed but it was not considered when the judge made his past persecution findings. When you say it wasn't considered do you mean because the court didn't talk about it or do you mean that it actually you can maintain that it was not considered? Well it definitely wasn't considered and because the judge specifically said that the two the two detentions that he was subjected to even though he was beaten on during one of them they don't rise to the level of persecution but the judge didn't consider the other 23 years of harm that he suffered commutatively. Also the transcripts indicate that there are six exhibits which were entered into the record. The notice to appear was marked one, the credible fear worksheet was marked two, the credible fear summary was marked three, the advisers was marked exhibit four, the I-589 application was marked exhibit five and then the court also marked exhibit six of the 2018 I believe it was Department of State to the country condition reports. There's no evidence no evidence was marked into the record even though it was submitted and at one point the judge discussed it in the transcripts but it was not marked into the record and it was not considered. It was definitely not considered when when the judge made his past persecution determination because the judge specifically states that the two times that he was detained do not rise to the level of persecution. Counselor do you contend that that detentions I mean the board of in unpublished decisions the Board of Immigration Appeals has found similar situations where past persecution was established based on a small number of a few detentions but it's because when you look at the grand scheme of things the situation in Cuba once a person is targeted as being a dissenting or criticizing the Cuban government that's they have a target on their back for the rest of their lives so I think that in a lot of cases it's taken into the whole totality of the situation is considered in this case it was not it was not considered. Counsel the board noted in its decision a handful of cases from our court and I could understand that you would think that they're wrong I have no idea if they're right or wrong but I think that they're wrong and I'm trying to make sure that I understand is your argument that those decisions are wrong or do you recognize that those decisions are the precedent of our court and that they they necessarily involve facts that are more severe than those that apply to your client?  I believe that when all of Mr. Escobar's the harm all of the harm that he suffered is taken into consideration that together it rises to the level of persecution necessary to meet the standards that are discussed in in the cases that are cited by the board. So do you have a distinguished Gattani versus VAR? I'm sorry judge Oldham. I think that's one of the cases that my co-counsel actually did the research on. I wouldn't know if she's able to talk about that and we have to wait for her to rebuttal. I'm not sure because I didn't I didn't review that that one. Okay that's one where somebody was beaten I believe a couple of times to the point of unconsciousness maybe if I recall and we said that was not adequate for asylum if I recalled it correctly. I don't know the circumstances of that particular case but I can say that when you have someone that has been detained multiple times over a 23 year period and the mistreatment and the harms of this person suffered are physical, psychological, economical, and also deprived him of his of his liberty and most of the time everything all of the encounters that he had after he was detained were not explored by the judge or the court but are based on the fact that he criticized the government and he became a target for the government. So I believe that together everything that happened to Mr. Escobar rises to the level of persecution. Maybe one incident of being beaten is not enough for this court but when you have 23 years of situation including being sent to a labor camp for nine months yeah that's I believe that constitutes persecution. So it's that it's more than just a couple of beatings it's the whole trajectory and that's because you so so you wouldn't stand alone on the beatings themselves that wouldn't be enough under our case law. I believe that under the Fifth Circuit no wouldn't unless we can change the court's mind here today no it wouldn't be enough under the Fifth Circuit case law. So you need the entire trajectory of the of his whole situation in order to win today is that correct? Yes and I believe that it should have been considered because it's like a story you know the judge didn't immigration judge didn't explore and probe and because this is this was a pro se respondent who was detained so the immigration judge didn't probe and build the record and ask the questions necessary to to ask I mean you're a teacher you graduated you have a degree why are you not working as a teacher that would be a basic question to ask especially when we provided a handwritten statement explaining to the judge you know how this all started also and I think that we covered what I was going to say on my second point which is you know the the commutative effect of all that happened to him with within the last 23 years so I'd like to take a moment and talk about the third reason that the board error and that that is when when the judge was when the judge failed to evaluate Mr. Escobar's fear of future persecution using the four-part test in Zao and required Mr. Escobar to offer direct proof of the well the substantial evidence of the record that I've been discussing you know compel the funding of well-founded fear of future persecution independent of the respondents past persecution and immigration judges decision in discussing Mr. Escobar's well-founded fear of future persecution the judge found that Mr. Escobar had a subjective fear of persecution and this finding is noteworthy because the subjective prong is satisfied only the applicants fears genuine based on credible testimony and evidence of record and earlier in the judge's decision the judge found didn't found that the mr. Escobar was not credible so if mr. Escobar was found credible earlier in the decision why did the judge find that he had met the subjective fear of persecution prong it's that I thought that was noteworthy because it could infer that he wasn't backed credible and that the evidence of record was sufficient to establish past however the judge determined that mr. Escobar did not meet the objectively reasonable prong because he did not provide sufficient evidence to show that anyone in Cuba was still looking for him and so your time has expired you've good afternoon your honors Giovanni DiMaggio on behalf of the Attorney General your honors mr. Escobar Bardessia fails to satisfy his burden on petition for review to establish that the evidence he submitted to the immigration court compels reversal of the agency's basis for denying his political asylum claim it's critical here that the court just like the agency did acknowledge the fact that there are applicable legal standards here for asylum applicants that govern mr. Escobar Bardessia's claim as much as any other asylum applicants claim and as relevant here mr. Escobar Bardessia was required to show among other things one that the past or feared future harm was extreme enough to amount to persecution and two that it bore a nexus to a substantial evidence in as much as it found with respect to the past persecution that his or the past persecution claims that his encounters with Cuban authorities were either either amounted to food regulation citations bearing no nexus to a political opinion or they did not involve harm extreme enough enough to rise to the level of persecution and I need to disabuse the court of the suggestion that counsel makes that the court and aggregate past incidents that are unrelated to protected grounds as you know the court affirmed and applied in Aguilar Chavez which the government cites in its brief in that case the court rejected the petitioners argument that past harm should have qualified cumulatively as past harm excuse me as past persecution where the petitioner impermissibly attempted to aggregate past incidents relating to her family social group with other past incidents unrelated to the family social group and here why is this unrelated well your eyes the past behavior over 23 years unrelated so the past behavior over 23 years is unrelated because for 23 years you have mr. Escobar Berdesia receiving violations for you know various food regulation violations that has no connection to any political opinion at no point in any of that over 20 year period does he indicate that the police officers or the finding officials I suppose would be more accurate to say you know inquired about his political opinion as they were finding him but or before they were finding him or even after they find him there's there's just nothing indicating that there's a tether to his political opinion as opposed to him just you know treated sure unfairly with respect to you know his testimony that sometimes they would give him a permit and other times they would take the same permit away when the conditions of his business didn't really change and sure that might be unfair that might amount to harassment but a finding that the relevance here the relevant question here is whether any of that was connected to his political opinion and he didn't provide any evidence that all of those years of food violation citations somehow connected to his political opinion unfair as he might have felt that those are food citations were. So only in 2019 when the chief of police identified him as being a person who did not agree with the regime in Cuba and was trying to force him to vote so is that when you believe that the it becomes the relevant time period where when do you believe it becomes the relevant time period? Well your honor all of it is relevant I don't mean to suggest that you know the earlier years are irrelevant but the key here is that the what the agency does here is when it applies these facts and this chronology and all of these items the actions that happened here to the legal framework the distinguishing feature of the earlier 20 plus years of food citations is that those have no connection to his political opinion and then when it turns to his encounters which were limited you know he had approximately three threats two detentions only one of which resulted in an assault which is not to to belittle what happened there but as he was not severely injured or severely severe to to require any kind of hospitalization all that happened was he had a split lip and nothing permanent these were all cabins. I thought he was did require hospitalization or he went to the I thought he was taken to the hospital for treatment. Yeah he forgive me your honor you're right he what I meant to emphasize with that it required it resulted only in a split lip and didn't result in any permanent physical injuries and that was one of the two times right and yes the second time he was detained he described it as involving no physical harm but it was psychological torture he did not well it was he said he was abused psychologically and deprived of sleep and food for the period of his detention. So we have to take it that he's had two times of being tortured that are connected to his to his political views that he's got a nexus that he's you know it's right after they tell him he has to vote before the committee or whatever and he's and it's and it is not it's not some a lot of times these are not people that are the government and we say oh it's the government and it's acquiescing this is the government doing this so can you help us if there are two times would other circuits hold this was enough or if the if the BIA and the IJ had not found it would where is our precedent in line with other circuits of course we're bound by our precedent I'm not trying to suggest otherwise. Sure your honor I'm not aware of what other circuits are doing with this specific type of claim I know this circuit in cases like Abdel Masai, Singh and Jitani has affirmed similar similar findings from the agency on a similar spectral backdrop including in Abdel Masai the non-citizen there experienced two arrests two detentions and beatings and that was insufficient to rise to the level of persecution. In Singh which one of your honors actually was you judge I'll rather that you you were you thought it was Jitani but you were referring to Singh which was a case where a non-citizen was beaten twice once to the point of unconsciousness and also received death threats and that was insufficient to rise to the level of persecution. Jitani is another case where a non-citizen was threatened by on three occasions one of which resulted in physical injury and that didn't rise to the level of persecution so the agency's decision here is in line with this court would not be stepping out of bounds or out of line with its own precedential to sit or excuse me with its own prior decisions addressing harm that was on par or even worse than the kind that was at issue here. So your honor I thought so but perhaps not if it's not one you're familiar with that's okay. I'm not I'm sorry I'm not I'm not familiar but can you repeat the name of the case? Tamara Gomez. Tamara Gomez and do you have a citation? 447 F 3rd 345. Okay if the court would like I can look I could provide. I'm sorry 343 is the beginning of the case. No I'm not asking you to do homework I'm just I I'm that's okay I'm curious it's that one they did find it was enough and so I'm trying to compare and contrast. Understood forgive me your honor for not being familiar with that one. So the other thing I wanted to make sure I address here is that the backdrop which your honor alludes to in her questioning and certainly Petitioners Council alludes to in their presentation that the backdrop of the of Cuba's ever-ongoing political revolution doesn't require drawing the inference that the government's enforcement of the food safety regulations is politically motivated. I just want to make sure that that's clear and and again I can't emphasize enough that there was no evidence linking the food citations to his political opinion and Tesfa Michael is the case on point there which the government relies on in its brief that exemplifies kind of in an exaggerated way even more so than here how the the what the agency has to infer from the actions taken by the government. I won't go into that any further unless the court wants me to expand on that point and then again as to the food violations excuse me as to the the limited threats detention and an assault that he experienced from September 2018 or so to March 2019 first of all this was cab into a limited period of time consider the fact that he's you know today a 54 year old man who spent over 50 years in Cuba and in all those years including all the years of this you know the encounters about the food violations never did he you know encounter a situation where as occurred during that that short window of time that he was accused of and detained on the basis of being a counter-revolutionary which all was tethered to this constitutional vote that was occurring at the time and then his failure to attend the vote and subsequently his being arrested under suspicion of creating and posting posters counter-revolutionary posters so how does this fall short from the just even the what what what makes it fall short during the relevant time period well it's it's that the severity of the harm I said the the actions that took place during that small window of time it's that the psychological torture beating he was psychologically tortured when he was kept for the 48 hours the second time and there's I don't think there's a questioning on the credibility on that that did happen didn't it well he alleges that he was subjected to psychological harm I don't recall if you use the word torture record 234 would be the relevant portion of the transcript does the case depend upon whether it's torture or harm I mean what it what is what would be enough how does it fall short it falls short because again the the ultimately the nature of the harm and including the frequency and an actual the degree to which he was he was harmed doesn't rise to the level of persecution when you compare it to other cases that this court has considered similar or worse harm three incidents of what would be enough your honor it's it's fact-specific and for me to speculate you know I'm not sure would be very helpful I think what's more helpful is to focus on the cases where the court has upheld a finding of insufficiently serious harm to rise to the level of persecution where the harm was as serious or worse than here and that would be Abdullah Masai saying and where you know again he was only threatened on about three occasions here he only had two detentions and only one of them involved in a physical assault that in any event did not result in serious physical or lasting injuries and we're you know turning to the issue of the future persecution which is also important to the agency's decision they weren't the evidence he submitted to the immigration immigration court was insufficient to show that the authorities continue to still be interested in him and continue to seek him out based on any political animus because aside from his having been fined for food safety violations bearing no nexus to his political opinion his past encounters with the Cuban authorities were limited to just those three incidents strictly relating to his refusal to vote for the new Cuban Constitution he was told if he he didn't cease and desist in his political beliefs that they would make him disappear or perhaps disappear in prison that's well they they they issued similar threats to him in 2019 when they told him that they needed to vote for the constant the Cuban new Cuban Constitution and they didn't they didn't to the contrary what they did instead was they brought him to that February meeting where they you know had him speak about his views and that's where they detained him threatened him and yes assaulted him resulting in the split lip but ultimately released him and then similarly when they detained him again and the end of March it wasn't even as bad as that prior detention they they detained him they threatened him again they did deprive him of food and and sleep so to judge Elrod's point which was psychologically abusive but it was a limited period of time and then again they released him so and what's nothing else happened to Mr. Escobar Verdecia for the several months that he was remaining in the country from March 2019 to May of 20th 2019 when he left for the United States he received no more threats and was not harmed again which cuts against any suggestion that he may make that the government was after him at that point and you know nothing would stop them from from coming back to him so that also supports the agency's finding here that the evidence he submitted did not show sufficiently that the Cuban authorities were still seeking him out because of any political animus Jitani actually is another case that applies here where there were three occasions on which the petitioner was threatened there these the court was you know deemed the and the agency deemed these to be one-off incidents related to a one-time event in that situation it was an Albanian election in comparison to the Cuban constitutional election that was unlikely to recur and where that petitioner having experienced no further threats despite remaining in Albania for months after the last instance of threatening behavior the agency there found there was no evidence in the record to suggest that anyone had been looking for him in Albania since that since the election much less that he would be targeted in the future and we're on a similar factual footing in this instance with respect to the fear of future persecution I do want to note as well with respect to like my colleagues summoning of you know the IJ's failure to conduct a mixed motive analysis failure to consider certain evidence you know allegedly in the record regarding a labor camp and his prior job as a teacher these are all arguments that were not exhausted before the agency and the court lacks jurisdiction to review them they're also waived in the in the opening brief so that would be another basis for the court not not to consider them as a basis for whether to uphold the court's decision here that are you saying that the evidence was there right so the evidence well first of all so the mixed motive argument the argument was not there and the labor camp reference I did find that and that was a reference to some kind of punishment here allegedly that the government allegedly built out in connection to these food violations again there was no connection to any political opinion just to the extent that your honor you know is concerned about about there being a link there there isn't but so I'm not contesting that that evidence is there what I'm pointing out of the court is that petitioner can't rely on it now belatedly and it's all the agency for not you know considering it where they didn't exhaust that issue before the board which would have given a chance to address the issue head-on and therefore the court doesn't have jurisdiction over it and also didn't raise that issue in their opening brief waiving the issue before the court as well as failing to exhaust it before the agency similarly to also just to the extent your honors question goes to the the job the professorship that he lost that evidence is in the record but again that's not an issue that he pressed before the board or before or even before this court in his job as a professor and he had been no because again tortured putting aside the exhaustion and the waiver issues there's no link to his losing his job supposedly and sometime in the 90s and you know the basis for his past persecution and future persecution claims here at most that would indicate that you know the school fired him for perhaps for his political opinion but he has he doesn't tether that to you know the actions over the course of the subsequent 20 years for the food safety violations and certainly doesn't tether that to the actions of the police in 2018 and 2019 when he was suspected for failure to vote for the Cuban Constitution and for allegedly putting up posters of being a counter-revolutionary so your honors I just want to make sure I didn't miss anything here but if your honors have no further questions for those reasons and for the reasons in the government's brief the court should uphold the agency's decision and deny the petition for review as mr. Escobar again has failed to meet his burden to show that the record before the immigration court compels a reversal of the agency's bases for denying his political asylum claim is it Gil Arroyo? Yes your honor. Good afternoon judges and may it please the court. My name is Johanna Gil Arroyo and I also represent the petitioner Mr. Escobar Bertezia. In regards to the immigration judge the board and the respondent in his brief on page 21 assert that Mr. Escobar Bertezia's fines beginning in 1996 were solely a result of food and safety violations and were not on account on a political animus and do not connect to his later events in terms of political opinion. His oldest fine however dating back to 1996 was issued by the police after they unlawfully entered his home searched his home and obtained the food from this search and could find that on the record of appeal on page 241. This honorable court has also previously held that Abdel Messiah the prosecution for violating laws of a country generally do not constitute persecution unless that motivation unless that punishment was motivated by a protected ground and there is excessive and arbitrary action in its nature. This would include what this court has given example of severe beatings being sent to a Nazi concentration camp. Here the majority of all of his fines dismissals from work his detentions could be deemed to have been motivated by Mr. Escobar's political opinion. As he did testify the fines were a form of harassment. When you don't work for a state or pertain to the party it's illegal unquote. Record of appeal page 241. The fine and his detentions were excessive and arbitrary in nature as they spanned about 23 years and he would be sent to a labor camp for nine months record of appeal page 238. Please see also record of appeal page 316 to 318. His fear in essence was not prosecution but the persecution he endured for not participating in these communist parties. Even country conditions also affirmance. And if we discuss Tamir Gomez Gonzalez in there what Judge Eldred was discussing is that it was a Colombian FARC. He was the opposition to the Colombian FARC. He went in and rescued some people and then they found out who he was. They began calling him incessantly targeting his family saying we're going to kill you and then when he moved they also found him again. Continued the calling and then eventually I believe there was a bombing that occurred and he left with his family once they found out that he was targeting members. I would say in this way as well the respondent was continuously harassed by the police for 20-30 years. I would note I don't know if it's out of my boundaries but the country at that point I would say up and I guess exit from the country and so Mr. Escobar most likely was unable to leave the country at that time. Nevertheless in Tamir B. Gomez this court also held that harm resulting from persecution does not have to be physical. It could be an economic disadvantage or deprivation of liberty which is the case here with Mr. Escobar. The respondent also touched on Tesla Michael E. Gonzalez in saying that that is obviously present here in this case but Mr. Escobar does he has numerous fines, his threats, arbitrary detention and beatings were not an account of mundane attributes of prosecutorial conduct but instead they were actual political inquisition because it lasted for 23 years. In Jitani, I know the petitioner there, this court held that he was detained on three occasions one of which resulted in a physical assault but it was insufficient to be deemed persecution because he did not have the quality, sustained, systemic, I and he stayed an additional six months after his persecution. What is systemic and what is systematic? Well something is methodical, organized and intentional we call it systematic and when something's widespread and affects many parts of it it's called systemic. Here the Cuban government has systematically made every effort to deter political opposition including implementation of neighborhood informants such as the CDR but has systemically led to abuse of threats, detentions and beatings the like of which Mr. Escobar has also endured over 23 years. Mr. Escobar, unlike Jitani, left two months from Cuba unlike Jitani who stayed an additional six months. Here the substantial evidence in the record which includes Mr. Escobar's testimony, witness letters, summons a Cuban human rights report compels a finding that there is a direct connection between the majority of fines he received, his dismissal from work, the numerous threats, his detentions, his beatings and psychological harm he suffered in his lack of support for the Communist Party. For these reasons we ask this honorable court to review his proceedings. Thank you counsel. We have your arguments. Your